UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BRADLEY PAUL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-cv-00235-DBH |
| | ) | |
| EVERY JUDGE, DISTRICT ATTORNEY, | ) | |
| POLICE OFFICER, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER SCREENING PLEADING PURSUANT TO
28 U.S.C. § 1915**

In this action, Plaintiff Bradley Paul Williams alleges that Defendants violate the
Constitution when a bail commissioner fee is paid in Maine and not refunded following dismissal
of the charge that required the posting of bail.

Plaintiff filed an application to proceed in forma pauperis, which application the Court
granted. (ECF Nos. 3, 4.) In accordance with the in forma pauperis statute, a preliminary review
of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2). Following that review, I
recommend the Court dismiss Plaintiff's complaint.

BACKGROUND

Plaintiff asserts he was arrested and detained in Belfast for mailing a court document to the
opposing party in a state court protection from harassment proceeding.[1] (Complaint at 4, ECF No.
1.) The bail commissioner set bail at $500 and imposed a $60 fee, which amounts Plaintiff paid.

---

[1] In another matter, Plaintiff has asserted a claim against the City of Belfast and others regarding the alleged false
arrest. *Williams v. Waldo County*, No. 1:16-cv-00211-DBH. Based on a review of the complaint in that action, it
appears that the arrest occurred in 2014.

(*Id.*)  More than a year later, the state dismissed the charges against Plaintiff.  Plaintiff received a refund of the $500 bail, but not the $60 fee.  (*Id.*)

Plaintiff requests a refund of the $60 fee.  He also asks the Court to overturn "the offensive laws," to order refunds for everyone who has paid the bail commissioner's fee, and to award punitive damages.  (*Id.* at 5.)  The $60 bail commissioner fee paid by Plaintiff is the maximum fee permitted by Maine law.  15 M.R.S. § 1023(5).[2]

DISCUSSION

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action.  Because the waiver of fees might encourage some individuals to file suit regardless of the merits, the statute authorizes the court to dismiss actions that fail to state a viable claim or that present frivolous, malicious, or repetitive claims.  28 U.S.C. § 1915(e)(2)(B).  "Dismissals on these grounds are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

## A.     Standard of Review

When deciding whether to dismiss a claim or action for failure to state a claim, the court must accept as true the factual allegations of the complaint, draw all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determine whether the complaint, so read, sets forth a plausible basis for recovery.  *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,

---

[2] The bail commissioner provision is a section of the larger Maine Bail Code, 15 M.R.S. §§ 1001 et seq.  The statute contains two provisions for indigent relief from the bail commissioner's fee.  The first provides that "[t]he sheriff of the county in which the defendant is detained may create a fund for the distribution by the sheriff or the sheriff's designee for the payment in whole or in part of the $60 bail commissioner fee for those defendants who do not have the financial ability to pay that fee."  *Id.*  Additionally, "[t]he Chief Judge of the District Court may adopt rules requiring a bail commissioner to appear and set bail regardless of whether the defendant is indigent and unable to pay the bail commissioner's fee."  *Id.* § 1023(8).

524 F.3d 315, 320 (1st Cir. 2008). To assert a civil action in federal court, a plaintiff cannot simply allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

When the plaintiff is a pro se litigant, the court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions. *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

**B.    Analysis**

Under 42 U.S.C. § 1983, an individual may bring an action in federal court against another person who subjects him to the deprivation of a federal right through an exercise of state authority.[3] 42 U.S.C. § 1983; *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989). Accordingly, in this case, this Court's jurisdiction is founded on § 1983. In order to maintain a § 1983 action in federal court against those who exercise state authority, Plaintiff must assert a claim that describes a deprivation of a federal right. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979) (explaining that section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes").

---

[3] Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
> . . .

42 U.S.C. § 1983.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. The analysis of a due process claim proceeds in two stages.  The Court first considers "whether there exists a liberty or property interest of which a person has been deprived," and if so, it then considers "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  "[T]he processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985).

Plaintiff alleges facts related to his payment of a $60 fee, through which payment, together with the cash bail, Plaintiff secured his release on bail.  Plaintiff, therefore, has not alleged a denial of his liberty.[4]  Indeed, given that Plaintiff alleges he was arrested on a "Friday night" (i.e., after regular court hours), the bail commissioner system allowed Plaintiff to secure his pretrial release without spending one night in detention.[5]

Because Plaintiff was not deprived of his liberty, the issues are whether the $60 bail commissioner fee is refundable and, if not, whether the loss of the fee is a non de minimis deprivation of property amounting to a punishment for being arrested.  Plaintiff alleges that the bail commissioner simply arrived at the county jail, determined how much money Plaintiff had in his wallet ($560), set the bail at $500, and took the remaining $60 as his fee.  (Complaint at 4.)

---

[4] Under Maine law, certain crimes are "bailable as of right preconviction."  15 M.R.S. § 1003(3).

[5] "Bail … is basic to our system of law …." *Schilb v. Kuebel*, 404 U.S. 357 (1971) (explaining that the prohibition against excessive bail stated in the Eighth Amendment "has been assumed to have application to the States through the Fourteenth Amendment").  I am unaware of any authority to suggest that the imposition of a $60 fee to obtain bail would offend the Eighth Amendment prohibition against excessive bail, particularly on facts demonstrating that the plaintiff was not denied access to bail.  Persuasive authority is to the contrary. *Broussard v. Parish of Orleans*, 318 F.3d 644, 651 (5th Cir. 2003).

Plaintiff further contends that there is no means of recovering the $60 bail commissioner fee through any postdeprivation procedure, particularly as bail commissioners are immune under state law against civil liability pursuant to 15 M.R.S. § 1023(3).  (*Id.* at 5.)

### 1.    Allegations Against Named Defendants

Plaintiff attempts to assert a claim against all of the state court judges, including some named individually, the state district attorneys, various law enforcement officials and agencies, a bail commissioner, and the state's attorney general.  In support of his attempt, Plaintiff asserts that the "theft" or "extortion" of the $60 fee has been sanctioned by "every judge, cop and prosecutor in the State of Maine." (*Id.*)

First, with respect to police officers, district attorneys, the attorney general, and the Maine State Bar Association, Plaintiff has not alleged any facts regarding their involvement in the assessment, collection or retention of the bail commissioner fee in his case.  Accordingly, dismissal of Plaintiff's complaint against them is warranted.[6]

With respect to Defendant Crowley, to the extent Plaintiff seeks to recover punitive damages against Defendant Crowley in his individual capacity for a constitutional violation, given that Maine law authorizes Defendant Crowley to collect the fee for his services, Plaintiff's complaint would not support a finding that Defendant Crowley's retention of a $60 fee for bail services reflects "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others," which is the standard that governs an award of punitive damages in a § 1983 claim.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).

---

[6] Plaintiff cannot pursue a claim on behalf of every person ever assessed a bail fee in connection with an arrest resulting in charges that were later dismissed.  "The federal courts have consistently rejected attempts at third-party lay representation.  By law an individual may appear in federal courts only pro se or through legal counsel."  *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (citing *United States v. Taylor*, 569 F.2d 448, 450 – 51 (7th Cir.), *cert. denied*, 435 U.S. 952 (1978), and 28 U.S.C. § 1654).  As a pro se litigant, Plaintiff cannot represent the interests of other persons in this court.  *Id.*

Plaintiff's action thus is a claim for equitable relief in the form of a refund and a request that the Court declare the bail commissioner fee provision of the Maine Bail Code unconstitutional. Plaintiff's claim is inherently a claim against an official acting on behalf of the state, i.e., an "official capacity" claim.  In the context of an official capacity claim requesting a refund of a fee paid in connection with the administration of the Maine Bail Code, Plaintiff has not alleged any facts upon which one could conclude that Defendant Crowley is charged with the administration of refund requests or with determining the availability of refunds as a matter of state policy. Because Plaintiff must pursue his claim against an official or entity charged with such authority, *Ex parte Young*, 209 U.S. 123, 159 – 60 (1908), and because Plaintiff has not asserted facts to support an official-capacity claim against Defendant Crowley, Plaintiff has not stated an actionable claim against Defendant Crowley.

Finally, as to Plaintiff's claim against the judicial officers, the only conceivable claim he could have would be a claim against the judicial officer who presided over the dismissal of the criminal charges arising from Plaintiff's allegedly unlawful arrest.  Judges can be proper defendants "when they promulgate rules or have individual authority to initiate enforcement measures," *Fellows v. Raymond*, 842 F. Supp. 1470, 1471 (D. Me. 1994), and where they possess "administrative responsibilities" in connection with the challenged statutory scheme. *Rivera-Puig v. Garcia-Rosario*, 983 F.2d 311, 318 (1st Cir. 1992).  However, even if the presiding judicial officer who entered the order dismissing the charges against Plaintiff might be an appropriate defendant, Plaintiff has not identified that judicial officer.  In addition, Plaintiff has not alleged that he ever made a request of that judicial officer for the refund of the bail commissioner's fee, that the judicial officer had the authority to refund the fee, or that he would lack a state law remedy had the judicial officer denied a request for the return of the bail commissioner's fee.  Furthermore, in the specific context of a § 1983 civil action challenging the State's administration of the Bail

Code, Plaintiff has not alleged any facts that would support the conclusion that the presiding judicial officer has the authority to promulgate rules on behalf of the state court or otherwise to establish state policy regarding the refund of bail commissioner fees.  Plaintiff, therefore, has not stated a claim against a judicial officer.

### 2.   *The Merits of Plaintiff's Constitutional Claims*

Even if the Court determined that Plaintiff had joined a proper defendant in his challenge to the bail commissioner fee, dismissal is appropriate because Plaintiff has failed to state an actionable claim.

#### a.   *Relevant authority*

In *Schilb v. Kuebel*, 404 U.S. 357 (1971), the Supreme Court reviewed the Illinois bail system, which provided arrestees the option to obtain pretrial release through either the payment of the entire bail amount, in which case compliance with the bail bond would result in a complete refund, or through the payment of 10 percent of the bail amount, in which case a fee of 1 percent of the amount of bail would be retained by the court regardless of compliance with the bail bond terms.  *Id.* at 362.  The Court held that the system did not violate due process and equal protection given that the choice to use the 10 percent bail option was "reserved to the accused," *id.*, and because the "1% cost-retention provision," *id.* at 365, was nothing more than a modest administrative fee supported by a valid administrative rationale (payment for the bail bond option, which payment offset the increased risk of bail jumping) rather than a cost imposed by the court against the not-guilty person.  *Id.* at 363 – 371.[7]

---

[7] The Court observed that the Illinois system was a significant improvement on Illinois's historic use of a bail bondsmen system, which system required the payment, as costs, of a fee measured by 10% of the amount of bail. *Schilb*, 404 U.S. at 366.

In *Payton v. County of Carroll*, 473 F.3d 845 (7th Cir. 2007), the Seventh Circuit considered whether the Illinois bail system violated the Constitution where it permitted a detainee to obtain bail from the sheriff rather than the court, subject to an administrative fee set and retained by the sheriff.[8]  *Id.* at 846.  The Court affirmed dismissal of due process claims, noting that the Supreme Court held in *Schilb* that such a small administrative cost readily survived rational basis review.  *Id.* at 848.  The Court was not persuaded that prepayment of the fee made a difference to the analysis.  *Id.* at 849.  The Court also considered the potential impact of the fee on an indigent defendant, and concluded that the Illinois system could "address the problem of the indigent defendant" because the Illinois courts could exercise discretion in setting the amount of the bond, effectively reducing the bond to offset any fee.  *Id.* at 849 – 50.

In *Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir. 2003), the Fifth Circuit affirmed the dismissal of a challenge to Louisiana statutes that required payment of a fee to obtain release on bail.  *Id.* at 647.  The fee was $15, unless the fee was suspended by a judge.  *Id.*  Additionally, the fee would be refunded on a finding of not guilty or dismissal of the charges.  *Id.*  Material to the court's analysis of the procedural due process claim was a record establishing that the various parish statutes at issue were "capable of adequately providing a refund" or "some opportunity to request that a judge suspend the fee."  *Id.* at 656.[9]  On the substantive due process analysis, the court held that in light of *Schilb*, the fee for bail need only be reasonable and that the $15 fee satisfied that standard.  *Id.* at 657.  Unlike the statutes at issue in *Broussard*, the Maine statute permits a maximum fee of $60, but allows the bail commissioner to charge less, evidently based on an exercise of discretion.  15 M.R.S. § 1023(5).

---

[8] The fee described in the discussion in *Payton* was $33.  473 F.3d at 851.

[9] However, in its concluding summary, the court did not identify the availability of a refund as a reason for its affirmation of the district court's dismissal of the case.  *Broussard*, 318 F.3d at 663.

8

In *Buckland v. County of Montgomery*, 812 F.2d 146 (3d Cir. 1987), the Third Circuit affirmed the dismissal of a challenge to Pennsylvania court rules related to a bail procedure that authorized the county to retain a "reasonable charge relating to the costs of administering the percentage cash bail program." *Id.* at 147. Under that program, a detainee could deposit 10 percent of the bail set, rather than satisfying bail by other means, but subject to payment of the fee. *Id.* Depending on the county, the program set the fee at between 2 and 3 percent of the total bail. *Id.* The plaintiffs paid fees ranging from $200 to $1,500. *Id.* The state courts had ruled that the fees bore a reasonable relationship to the costs of administering the program. *Id.* at 147 – 48. The Third Circuit found no basis on which to disagree, concluding that if a particular transaction resulted in a greater cost than necessary, it was in any event cheaper than the bail bondsmen alternative, was on the whole rational, and presumptively produced significant fees only where there was also a more significant risk of bail jumping. *Id.* at 149.

In *Markadonatos v. Village of Woodbridge*, 760 F.3d 545 (7th Cir. 2014) (per curiam), the Seventh Circuit affirmed a district court order dismissing a case in which the plaintiff paid a $30 booking fee following arrest on a charge of shoplifting and, allegedly, the charges against him were dismissed without a guilty finding because of his satisfactory completion of a diversionary program. *Id.* at 545 – 46.[10]

---

[10] The Court in *Markadonatos* was divided on the basis for the dismissal. Judges Posner, Flaum and Kanne, reasoned that being "forced to pay even a small amount of money for being falsely arrested may present serious constitutional issues," but explained that the ability to obtain release on bail or bond to avoid jail time is a benefit rather than a deprivation and that the $30 fee charged for this "service" was therefore lawful. *Id.* at 546 – 47. In their view the right to bail is "a valuable right for which the person seeking it, whether guilty or innocent, must pay," and they concluded that this was the essential holding of both *Schilb* and *Payton*. *Id.* at 547. Judge Easterbrook, joined by Judge Tinder, concluded that the statute actually imposed a $30 fee on all persons arrested, he reasoned that the fee was constitutional only if the detainee was arrested on probable cause. *Id.* (concluding further that a loss of $30 does not entail deprivation of a "fundamental" right). The dissent maintained that the ordinance must be understood to impose an arrest fee because of the defendant's "actual practice of collecting arrest fees." *Id.* In light of this understanding, the dissent determined that a "fee based on the unreviewable say-so of one police officer is an arbitrary deprivation of property." *Id.* at 568.

9

b.  *Equal protection claim*

"The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105 – 106 (1st Cir. 2015), *cert. denied,* 136 S. Ct. 808 (2016).  Generally, to state an equal protection claim, a plaintiff must allege facts capable of supporting a plausible inference that "compared with others similarly situated, the plaintiff was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* at 106 (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001)).  Absent such facts, decisions related to a person's rights, privileges, and benefits under state law require only a rational basis.  *Id.*

Here, Plaintiff has not alleged facts that might suggest selective treatment based on impermissible considerations.  In other words, Plaintiff has not alleged that the fee is applied differently to him based on an unlawful reason.  Plaintiff, therefore, has failed to state an equal protection claim based on differential class-based treatment.  *Compare Schilb*, 404 U.S. at 369 – 70 (considering an equal protection theory because the 1% fee discussed in *Schilb* would only be imposed on those detainees who opted to secure their release by paying 10% of the bail amount). *See also Broussard v. Par. of Orleans*, 318 F.3d 644, 654 (5th Cir. 2003) ("The fee provisions at issue here apply to all arrestees, regardless of whether they enlist the services of a bail bondsmen or use their own funds to pay bail.  Thus, the fact that the Louisiana statutes fail to classify dooms arrestees' equal protection claims and prevents them from positively distinguishing their challenge from the facts of *Schilb,* at least on equal protection grounds.").

c. *Due process claim*

Preliminarily, the authority discussed above establishes that the imposition of a modest administrative fee does not constitute a constitutional violation.  In this case, the Maine Bail Code reflects that the $60 fee is paid as the bail commissioner's fee.  *See* 15 M.R.S. § 1023(5).  In this way, the fee is an administrative fee.  Insofar as a bail commissioner is required, as in Plaintiff's case, to appear promptly at the jail to assess bail when a person is arrested outside of normal business hours, the $60 fee cannot rationally be considered unreasonable.

In addition, even if the purpose and amount of the fee generate any constitutional concerns, Plaintiff has failed to allege facts that would support a due process claim.  The Supreme Court "has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).  Given that Plaintiff complains that the fee was not returned after the criminal charges were dismissed, Plaintiff's due process claim can be fairly characterized as a challenge to the post-deprivation process (i.e., the process that follows the payment of the fee).  Plaintiff thus would have to demonstrate the absence of an adequate post-deprivation process in order to sustain a constitutional challenge.  *See Mickelson v. Cty. of Ramsey*, No. 14-3164, 2016 WL 2342925, at *6 – 7 (8th Cir. May 4, 2016) (concluding that county's collection of a $25 booking fee did not violate due process where the county provided a post-deprivation procedure through which individuals who were wrongfully arrested, not charged, or not convicted could recover the booking fee).

In this case, Plaintiff has not asserted any facts to support the conclusion that the State of Maine lacks a process by which a person can seek the return of the fee under certain circumstances.  Instead, he simply asserts that he cannot recover the fee because bail commissioners are immune from suit.  The immunity afforded bail commissioners does not mean that the state does not provide

11

a post-deprivation process for Plaintiff to obtain the fee.  Importantly, Plaintiff has not alleged that

he requested the fee from and was denied the fee by a person or entity one would reasonably expect

to be authorized to return the fee to him.[11]  Plaintiff, therefore, has not alleged facts to support a

due process claim based on an inadequate post-deprivation process.[12]

CONCLUSION

Based on the foregoing analysis, after a review in accordance with 28 U.S.C. § 1915(e)(2),

I recommend the Court dismiss Plaintiff's complaint.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison<br>U.S. Magistrate Judge

Dated this 20th day of July, 2016.

---

[11] Plaintiff refers generally to the fee as "non-refundable," but does not assert any facts to suggest that he asked for and was denied the fee.

[12] Challenges to the constitutionality of a statute are generally characterized as either facial challenges or as-applied challenges.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  Because Plaintiff's claim concerns the availability of a refund following dismissal of the criminal prosecution, a matter that is not addressed in the Maine Bail Code, his claim is an "as-applied" challenge.  Although the distinction between as-applied and facial challenges does not change the standard for pleading a claim, *id.*, whether Plaintiff's due process claim is construed as an as-applied challenge or a facial challenge, Plaintiff's denial-of-a-refund claim requires an allegation that he pursued a refund from the state that was denied on the ground that no such relief is permitted under Maine law.

12