08/04/16

U.S. DISTRICT COURT
BANGOR, MAINE
RECEIVED AND FILED
2016 AUG -5 A 11: 45
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF MAINE, BANGOR DIVISION

Williams )         M16-235
)
V )
)
Every Judge, District Attorney, Police )
Officer, and Bail Commissioner in Maine )

### MOTION FOR LEAVE OF COURT TO AMMEND COMPLAINT
### MOTION FOR RECUSAL OF JUDGE NIVISON AND TO ADD HIM TO THE DEFENDANTS
### NOTICE OF GLITCH IN PACER/EMECF SYSTEM

Pursuant to rule 7 and other rules of federal procedures pro se Plaintiff Williams humbly requests leave of this court to amend his complaint before the court dismisses the complaint for "lack of evidence".

The dyslexic visually-impaired Plaintiff has tried unsuccessfully to process two valid debit cards as payment to the PACER system and has only this week been granted access, therefore he needs his deadlines reset accordingly. The problem was with the Pacer's credit card verification system.

Plaintiff begs the courts indulgence as his claim is valid but he is totally inexperienced and must trust in this court to factor in his lack of legal knowledge versus the overwhelming majority of the Defendants who have been extorting the innocent litigants for decades all of whom are well versed in legal combat arrayed against a babe in swaddling clothes. Plotkin V CIA 2003.

Judge Nivison writes "To assert a civil action in federal court, a plaintiff cannot simply allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant(s) subjected the plaintiff to a harm for which the law affords a remedy."

The facts are these:

A) On September 19th, 2014 the Defendant police arrested the Plaintiff in a retaliatory action for mailing a court document filed with the Belfast District Court , **Exhibits D-F.**

B) On the same day September 19th, 2014, bail commissioner Crowley obtained $560 cash for the bail and his commissioner's fee, broken down as follows: $500 bail and $60 bail commissioner's fee. At the time the Plaintiff verbally objected maintaining that this arrest was for mailing a court-ordered document and that he should be released on his personal recognizance, which the bail commissioner dishonored. **Exhibit Q.**

C) After a year of being subjected to a legal nightmare at the hands of the Defendants the fraudulent retaliatory charge was dismissed.

D) The Plaintiff verbally asked the clerk for the $60 when the $500 was refunded and was informed that it could not be refunded.

E) On June 1, 2015 the Plaintiff filed a "Demand for the Bail Commissioner to be Arrested/for Extortion/Demand for the Return of the Bail Commissioner's Fee/Demand for all Complicit Officials to be Charged with 'Misprision of Felony'" This was filed with the court and dishonored with no reply. **Exhibit V attached herein.**

F) Prior to this on April 14th, 2015 the Plaintiff filed a "Notice of Judicial Misconduct" against one of the Defendant judges Murray and attached a fee schedule to "Any Officer Wishing to Involve Himself in this Matter" for "to accept these terms, simply deprive me of, or interfere with my God-given constitutional rights". A copy was dropped off at the DA's office and the window at the police station. Notice to principal is notice to agent, etc. The Defendants dishonored this request with silence and accepted the monetary terms of the fee schedule by constructive notice by refusing to respond to Plaintiff's reasonable request for the extorted

funds back, violating his rights and thereby accepting the fee schedule. This subjected the Plaintiff to a harm for which the law obviously affords a remedy. **See Exhibit W.**

G) On June 5th, 2015 the Plaintiff presented the DA's office with a hand-delivered letter **Exhibit X** that states to Defendant Geoffrey Rushlau "You and your staff kidnapped and extorted $60 off of me." and ends "You owe me $60" and "I will remind you, sir, that your office has accepted my fee schedule. I hope you haven't misplaced it." Again, the $60, the time and energy exerted trying to recoup this loss, and to correct this constitutional defect/wrong in the courts, and the monies agreed upon by the Defendants negligence in not refuting the fee schedule, or the allegations of extortion, is a harm which this court is obligated by common sense to remedy.

H) On June 1, 2015 the case was fraudulently and libelously dropped by Judge Murray who stated that if "there were no further complaints or violations" whereas there never was a violation, only libelous fraudulent complaints, and he knew it. He fraudulently adjudicated the Plaintiff as guilty of "violations" without a trial or due process evidencing a criminal mindset. This is why the unlearned Plaintiff naively filed Exhibits V, W and X. He "dropped" the charge in **Exhibit Y.**

I) On June 4th, 2015, the Defendant Judge John Murray denied all motions with a blanket denial to "sweep under the rug" all of the Plaintiff's valid motions, complaints and objections, depriving Plaintiff even further of his God-given right to redress wrongs. The Plaintiff had exhausted his means and it had become clear that the state court system in this case was replete with corruption, as he had been through three judges at this point, none of whom took command of the situation and reprimanded the felonious arresting officers, as was their duty, again according to Plotkin Vs CIA.

Judge Nivison wrote "Under 42 U.S.C. § 1983, an individual may bring an action in federal court against another person who subjects him to the deprivation of a federal right through an exercise of state authority.3 42 U.S.C. § 1983; Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). Accordingly, in this case, this Court's jurisdiction is founded on § 1983. In order to maintain a § 1983 action in federal court against those who exercise state authority, Plaintiff must assert a claim that describes a deprivation of a federal right. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (explaining that section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes")"

The claims that violate a God-given constitutional right, and constitutes a deprivation of rights are are as follows:

1) Plaintiff's 4th Amendment Right "of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." When the innocent Plaintiff paid his $500 bail, regardless of what the Defendants may say, there was simply no way in hell he was going home without paying the additional $60. The victim is presented with no option and this was a Friday night arrest. Their was neither oath nor affirmation. The bail commissioner is a private contractor exercising state authority committing common-law extortion which is undeniably a violation of the Plaintiff's God-given constitutionally protected rights. The Defendants *never* had probable cause to begin with, therefore no valid warrant could exist, and they should all be careful of the company that they keep. They all sleep in the same bed and they all have eaten the fruit of the poison tree. This is clearly an unreasonable seizure. The Plaintiff was forced to pay for services that the errant Defendants had ordered in violation to his 4th Amendment rights.

2) Plaintiff's 5th Amendment Right to not be deprived of life, liberty or property without due process of law was violated. As a Defendant he was retaliated against and arrested, handcuffed and jailed on a Friday night for filing a valid court action, and for having been an eyewitness to the felony cover-up to a murder by Defendants Merl Reed and Mike McFadden, and for having intimate knowledge of complainant Jon Fishman's sex crimes, which he admitted to under oath, **Exhibits 1 and P.** For any to maintain that they are entitled to the Plaintiff's funds is delusional. This is common-law extortion.

3) Plaintiff's 6th Amendment right to counsel was denied. Plaintiff was never mirandized nor informed about his property rights when the $60 was extorted from him. This is always done *before* any counsel can be procured. This is done at the hands of those most learned in the law, with the exception of the unlearned co-conspirator the bail commissioner, and happens before even the lawyers can get their hooks into you. Fees can

only lawfully be levied upon persons guilty of infractions.

The Defendants are therefore guilty of 18 USC 241 "conspiracy deprivation of rights under color of law" and 18 USC 242 "deprivation of rights under color of law".

Title 42 section 1983 clearly allows this civil action to collect the $60.

Judge Nivison wrote "The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The analysis of a due process claim proceeds in two stages. The Court first considers "whether there exists a liberty or property interest of which a person has been deprived,"

The Plaintiff was not going to be released until the $60 was paid so both liberty and property were at stake and intertwined. There was no way that this untrained commissioner was driving out on a Friday night without getting paid. To maintain otherwise is ludicrous for a former Maine judge.

Nivison continued "and if so, it then considers "whether the procedures followed by the State were constitutionally sufficient." The determination as to whether this is constitutionally sufficient is a decision for the jury and is the heart of this case. It is highly inappropriate for a judge that has sat in the same shoes as the judge Defendants on a Maine bench to make this predetermination on behalf of his fellow Maine judges without due process, and is alarming to the Plaintiff. Nivison wrote "Swarthout v. Cooke, 562 U.S. 216, 219 (2011). "[T]he processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." Walters v. Nat'l Ass'n of Radiation Survivors, 473 U.S. 305, 320 (1985)." This is circular logic that demonstrates a bias against the dyslexic pro se litigant. In the common vernacular this is bullshit. The case cited is about Federally mandated VA fees and has zero bearing here. This has the appearance of subterfuge.

Nivison wrote "Plaintiff alleges facts related to his payment of a $60 fee, through which payment, together with the cash bail, Plaintiff secured his release on bail. Plaintiff, therefore, has not alleged a denial of his liberty.4 Indeed, given that Plaintiff alleges he was arrested on a "Friday night" (i.e., after regular court hours), the bail commissioner system allowed Plaintiff to secure his pretrial release without spending one night in detention." 5

The pro se litigant was told on camera that his liberty would have been denied had he not paid the bail *plus* the fee to the bail commissioner. The bail commissioner knew following a search of the Plaintiff that the Plaintiff had exactly $560 cash in his billfold and set the bail and his fee accordingly. The Plaintiff didn't have the money for the cab fare home. The Defendants falsely arrested the Plaintiff on a Friday night to specifically make it harder on the Plaintiff and the bail commissioner concurred. From the Plaintiff's standpoint he had to pay the conspirators against his liberty and property a ransom of $60 of which no man can articulate a rational reason why he should be so deprived of both. The Plaintiff's liberty was denied at the moment of his false arrest and regained only after having paid the common-law ransom or common-law extortion, not granted as a blessing by the bail commissioner.

In footnote 4 Nivison wrote "Under Maine law, certain crimes are "bailable as of right preconviction." The only crimes ever articulated were by the Defendants and not by the Plaintiff.

In footnote 5 Nivison wrote ""Bail is basic to our system of law " Schilb v. Kuebel, 404 U.S. 357 (1971) (explaining that the prohibition against excessive bail stated in the Eighth Amendment "has been assumed to have application to the States through the Fourteenth Amendment"). I am unaware of any authority to suggest that the imposition of a $60 fee to obtain bail would offend the Eighth Amendment prohibition against excessive bail, particularly on facts demonstrating that the plaintiff was not denied access to bail." No person is entitled to the monies of a man that has been set-up and railroaded by the police under any circumstances. This is such basic logic that it needn't be argued here. The Plaintiff never mentioned the Eighth Amendment and excessive bail is not the issue here, extortion and conspiracy between the police, judges, DA's and bail commissioners to deprive the innocent victims of liberty and property are. This is subterfuge.

Nivison wrote "Plaintiff further contends that there is no means of recovering the $60 bail commissioner fee through any postdeprivation procedure, particularly as bail commissioners are immune under state law against civil liability pursuant to 15 M.R.S. § 1023(3)." The pro se Plaintiff's inexperience prevented his submitting exhibits V, W, X, Y and Z which shows that he had exhausted reasonable means of recovery. The learned Defendants dishonored his requests at recovery and at that point should have informed the Plaintiff of their

written procedure, if any, for recovering the extorted fee. This is evidence that no such procedures exist, and as a Maine judge Nivison knows this. Furthermore, as Judge Nivison once sat in the position of one of the Defendants on the Maine bench he is well aware that there is no such procedure other than the course that the Plaintiff has trod. The bias of the former Maine judge is now obvious, therefore the Plaintiff must ask for a new judge untainted by the extortions of his fellow Maine BAR Association judges.

Nivison wrote "Plaintiff attempts to assert a claim against all of the state court judges, including some named individually, the state district attorneys, various law enforcement officials and agencies, a bail commissioner, and the state's attorney general. In support of his attempt, Plaintiff asserts that the "theft" or "extortion" of the $60 fee has been sanctioned by "every judge, cop and prosecutor in the State of Maine."

Nivison and his State colleagues, learned in the laws, and conversant in the legal definition of "extortion" or, "extortion is the crime of obtaining money or property by threat to a victim's property or loved ones, intimidation, or false claim or right". Judge Nivison has failed to explain why or how the bail commissioner's fee as it pertains to the innocent victim is not extortion. All of the state court judges participate in this anti-constitutional fleecing of the innocent party as well as Judge Nivison who is now named in the suit as well. The DA's all obviously knowingly participate, and these are facts yet to be obtained through discovery, interrogatories and depositions, and is a decision for the jury, and not the former Maine judge who knows that his hearing this case is replete with the appearance of bias.

The judges have all sworn the solemn oath to support the constitution of the United States and of this State, and to faithfully discharge the duties incumbent upon themselves as judge according to the Constitution. They all have disregarded this oath en masse and have all turned a blind eye to the obvious fact that not one person is entitled to one penny of the wrongfully accused. This we all should know as children raised with moral compasses.

Nivison wrote "First, with respect to police officers, district attorneys, the attorney general, and the Maine State Bar Association, Plaintiff has not alleged any facts regarding their involvement in the assessment, collection or retention of the bail commissioner fee in his case. Accordingly, dismissal of Plaintiff's complaint against them is warranted.6 "  The presumption of their involvement in the assessment, collection and retention of the fees is self-evident; who else collects the $60 from the innocent defendants if not them? These facts will readily come to light during discovery, interrogatories and depositions, as the ex-Maine judge Nivison is well aware, as he was once one of those involved, hence his interpretation of the anti-constitutional state laws which he has been entrusted to hear in an impartial manner. Instead of dismissing the complaint Judge Nivison has now been named as a Defendant, as Plaintiff is now alleging facts which indicate that he as well was involved in this bail commissioner's scheme as evidenced by his not recusing himself in this obvious conflict of interests.

Judge Nivison writes "With respect to Defendant Crowley, to the extent Plaintiff seeks to recover punitive damages against Defendant Crowley in his individual capacity for a constitutional violation, given that Maine law authorizes Defendant Crowley to collect the fee for his services, Plaintiff's complaint would not support a finding that Defendant Crowley's retention of a $60 fee for bail services reflects "evil motive or intent" or "reckless or callous indifference to the federally protected rights of others," which is the standard that governs an award of punitive damages in a § 1983 claim. " Again, the former Maine judge Nivison is deciding what is for the jury to decide. This is a trial issue and the jury is to determine the constitutionality of this law legalizing extortion for the bail commissioner. For judge Nivison to predetermine that the Plaintiff's complaint would not support that the theft of the $60 for services ordered by the Defendants and not by the Plaintiff are of inherently evil motive or intent. The extortion or theft of any money is inherently evil motive and intent. This violates the golden rule, the 10 Commandments and the Boy Scout Creed. The Judge should know better as this violates common courtesy and respect, common law, the Constitutions of Maine and the US and international law. They simply are not entitled to the innocent man's money. Plaintiff is entitled to punitive damages to the 1983 claim and will be borne out by the jury, not by a biased judge.

Nivison writes "In the context of an official capacity claim requesting a refund of a fee paid in connection with the administration of the Maine Bail Code, Plaintiff has not alleged any facts upon which one could conclude that Defendant Crowley is charged with the administration of refund requests or with determining the availability of refunds as a matter of state policy. Because Plaintiff must pursue his claim against an official or entity charged with such authority, Ex parte Young, 209 U.S. 123, 159 – 60 (1908), and because

Plaintiff has not asserted facts to support an official-capacity claim against Defendant Crowley, Plaintiff has not stated an actionable claim against Defendant Crowley." Plaintiff never alleged or charged that Crowley is administrator or responsible for refunds. On the contrary Plaintiff maintains that the bail commissioners are untrained, unregulated, undisciplined and even more ignorant of the law than himself. They simply extort the money. Plaintiff alleges the obvious; that no man is entitled to one penny of the wrongfully accused funds, and that Crowley and every other bail commissioner, as morally reasonable law-abiding citizens, are responsible for their own common law actions. He knows now, or it is incumbent upon him as a man, and a neighbor, to not accept funds from an innocent man who hadn't asked for his services. He knows because it is only right that once a person has gotten his bail back, that that person was in all likelihood innocent, and that he should present the bill for his services to the errant Defendant's, and not to the innocent man. Any other business man that does not adhere to these common law principles is rightly arrested, as this is theft and extortion. The state policy is not the issue here in regards to a refund of $60. It is the underlying theft and constitutional law violations.

Nivison writes "Finally, as to Plaintiff's claim against the judicial officers, the only conceivable claim he could have would be a claim against the judicial officer who presided over the dismissal of the criminal charges arising from Plaintiff's allegedly unlawful arrest. Judges can be proper defendants "when they promulgate rules or have individual authority to initiate enforcement measures," Fellows v. Raymond, 842 F. Supp. 1470, 1471 (D. Me. 1994), and where they possess "administrative responsibilities" in connection with the challenged statutory scheme. Rivera-Puig v. Garcia-Rosario, 983 F.2d 311, 318 (1st Cir. 1992). However, even if the presiding judicial officer who entered the order dismissing the charges against Plaintiff might be an appropriate defendant, Plaintiff has not identified that judicial officer."

The visually-impaired dyslexic pro se Plaintiff is new to the Federal Court and apologizes for his tardiness in submitting Exhibits V, W, X, Y and Z. Every judge in the State promulgates rules and have the individual authority to initiate enforcement measures, yet not one, as far as any can remember, has ever returned a bail fee to a wrongfully or maliciously accused person even though they can quote the aforementioned legal definition of extortion chapter and verse. They are all joined at the hip in this scheme as evidenced by this judge trying this case without the jury or the Plaintiff.

Nivison wrote "However, even if the presiding judicial officer who entered the order dismissing the charges against Plaintiff might be an appropriate defendant, Plaintiff has not identified that judicial officer. In addition, Plaintiff has not alleged that he ever made a request of that judicial officer for the refund of the bail commissioner's fee, that the judicial officer had the authority to refund the fee, or that he would lack a state law remedy had the judicial officer denied a request for the return of the bail commissioner's fee. Furthermore, in the specific context of a § 1983 civil action challenging the State's administration of the Bail Case 1:16-cv-00235-DBH Document 5 Filed 07/20/16 Page 6 of 12 PageID #: 14 7 Code, Plaintiff has not alleged any facts that would support the conclusion that the presiding judicial officer has the authority to promulgate rules on behalf of the state court or otherwise to establish state policy regarding the refund of bail commissioner fees. Plaintiff, therefore, has not stated a claim against a judicial officer."

Again, this is remedied with the motions to Judge Murray in Exhibits **V and W**, therefore the Plaintiff has stated his very valid claim against a judicial officer, hence every judicial officer, as the chief justice appoints their cronies as bail commissioners, and every last one of them, including former Maine judge Nivison, has participated.

### Merits of the Constitutional Claims

Judge Nivison writes "Even if the Court determined that Plaintiff had joined a proper defendant in his challenge to the bail commissioner fee, dismissal is appropriate because Plaintiff has failed to state an actionable claim." The Plaintiff *has* joined a proper Defendant *and* has stated an actionable claim. The actionable claim is common law extortion and the relief sought is the return of the stolen funds which the Defendants have retained unlawfully, and the overturning of the anti-constitutional law that gives the Defendant's the illusion that extortion is acceptable in American soccciety.

Nivison wrote "In Schilb v. Kuebel, 404 U.S. 357 (1971), the Supreme Court reviewed the Illinois bail system, which provided arrestees the option to obtain pretrial release through either the payment of the entire bail amount, in which case compliance with the bail bond would result in a complete refund, or through the payment of 10 percent of the bail amount, in which case a fee of 1 percent of the amount of bail would be

retained by the court regardless of compliance with the bail bond terms. Id. at 362. The Court held that the system did not violate due process and equal protection given that the choice to use the 10 percent bail option was "reserved to the accused," id., and because the "1% cost-retention provision," id. at 365, was nothing more than a modest administrative fee supported by a valid administrative rationale (payment for the bail bond option, which payment offset the increased risk of bail jumping) rather than a cost imposed by the court against the not-guilty person. " Schilb *won* that case, he didn't lose. The innocent person simply can not be responsible for the bail fees, the wrongful accusers, in this case the Defendants, are. Again, this is a trial issue for the jury to decide, and not a judge who sat on the Maine bench that should have recused himself.

   Nivison opined "The Court affirmed dismissal of due process claims, noting that the Supreme Court held in Schilb that such a small administrative cost readily survived rational basis review." The amount in question in *Schilb* was 1%, or a mere $7.50, whereas the amount in question here is even more than the 10% that Nivison stated in his footnote "The Court observed that the Illinois system was a significant improvement on Illinois's historic use of a bail bondsmen system, which system required the payment, as costs, of a fee measured by 10% of the amount of bail. Schilb, 404 U.S. At 366." Judge Nivison has proven the Plaintiff's point here by acknowledging that the Maine bail commissioner's extortion is even more exorbitant than the archaic bailbondsman's fee outlawed in Illinois by *Schilb*. $60 is significantly *more* than 10%.

   Nivison opined "In Payton v. County of Carroll, 473 F.3d 845 (7th Cir. 2007), the Seventh Circuit considered whether the Illinois bail system violated the Constitution where it permitted a detainee to obtain bail from the sheriff rather than the court, subject to an administrative fee set and retained by the sheriff.8 Id. at 846. The Court affirmed dismissal of due process claims, noting that the Supreme Court held in Schilb that such a small administrative cost readily survived rational basis review. Id. at 848. The Court was not persuaded that prepayment of the fee made a difference to the analysis. Id. at 849. The Court also considered the potential impact of the fee on an indigent defendant, and concluded that the Illinois system could "address the problem of the indigent defendant" because the Illinois courts could exercise discretion in setting the amount of the bond, effectively reducing the bond to offset any fee." This contradicts Nivison's assertion in the aforementioned footnote that indicates the Illinois bail system is a mess. "such a small administrative cost readily survived rational basis review" is in reference to the 1% cost in *Schilb,* whereas in this case the cost is arbitrary as set by the bail commissioner at 14%, a far cry from *Schilb's* 1 %. This indicates a bias on the former Maine judge Nivison's part, therefore he should respectfully recuse himself. He has predetermined this case without the jury or the Plaintiff on behalf of his colleagues.

   Nivison wrote "In Broussard v. Parish of Orleans, 318 F.3d 644 (5th Cir. 2003), the Fifth Circuit affirmed the dismissal of a challenge to Louisiana statutes that required payment of a fee to obtain release on bail. ld. at 647. The fee was $15, unless the fee was suspended by a judge. Additionally, the fee would be refunded on a finding of not guilty or dismissal of the charges. Material to the court's analysis of the procedural due process claim was a record establishing that the various parish statutes at issue were "capable of adequately providing a refund" or "some opportunity to request that a judge suspend the fee." On the substantive due process analysis, the court held that in light of Schilb, the fee for bail need only be reasonable and that the $15 fee satisfied that standard." Unlike the statutes at issue in Broussard, the Maine statute permits a maximum fee of $60, but allows the bail commissioner to charge less, evidently based on an exercise of discretion. In this case the *fee would be refunded on a finding of not guilty or dismissal of the charges.*" This is not the case here in Maine and it seems counterproductive for a former Maine judge to ascertain this as relevant. Also, this fee was only $15, nominal compared to the arbitrary fee set by the bail commissioners in this case. Interrogatories and depositions would most likely show that very few to none of the bail commissioners show this discretion alleged by the judge on behalf of his fellow Maine BAR judges.

   In those footnotes the judge corroborated the Plaintiff "the fee described in the discussion in Payton was $33. 9. However, in its concluding summary, the court did not identify the availability of a refund as a reason for its affirmation of the district court's dismissal of the case". If the court did not identify the 10% $33 refund as the reason for dismissal, it is irrelevant here.

   In *Broussard* the "Supreme Court rejected the contention that the one percent fee violated the Equal Protection Clause. Characterizing the fee as an administrative cost "imposed upon all those, guilty and innocent alike, who seek the benefit of the ten percent bail statute, the Court concluded that the legislation satisfied the rationality test."

Unfortunately, the bail commissioners in Maine charge $60, in some cases even if they determine that bail is neither warranted nor appropriate. They extort 60% on a $100 bail, which is usury. None of these citations apply in this case; this is not Illinois and this is not Louisiana.

In Giacco vs Pennsylvania the Supreme Court ruled that "The Act of 1860, set out below,[2] provides among other things that:

"in all cases of acquittals by the petit jury on indictments for offenses other than felonies, the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant shall pay the costs, and whenever the jury shall determine as aforesaid, that the . . . defendant shall pay the costs, the court in which the said determination shall be made shall forthwith pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid, unless he give security to pay the same within ten days." This clearly states that it is for *the jury* to decide, and that the Defendants can and should be held accountable for these fees.

Judge Nivison wrote "In Markadonatos v. Village of Woodbridge, , the Seventh Circuit affirmed a district court order dismissing a case in which the plaintiff paid a $30 booking fee following arrest on a charge of shoplifting and, allegedly, the charges against him were dismissed without a guilty finding because of his satisfactory completion of a diversionary program." It is presumed that this party was guilty "without a guilty finding" after his satisfactory completion of a diversionary program" reeks of bias on the good judge Nivison's part, as this obviously has the element of subterfuge against a visually-impaired dyslexic pro se victim of extortion at the hands of the Maine judges. The Plaintiff was ensnared by a completely corrupt bail commissioner's fee scheme and had committed no offense other than file a court motion. This statement by the judge is another "diversionary program". The Supreme Court stated that "the Court in Markadonatos was divided on the basis for the dismissal. Judges Posner, Flaum and Kanne, reasoned that being "forced to pay even a small amount of money for being falsely arrested may present serious constitutional issues," which it does. They failed to mention Marbury vs Madison, 1803 which decided unequivocally that this Plaintiff's constitutional rights trump and preclude any Maine code or statute to the contrary. They also ruled " that fee based on the unreviewable say-so of one police officer is an arbitrary deprivation of property." The Plaintiff is baffled why the judge would consider this reason for dismissal; on the contrary it bolsters the Plaintiff's case.

## Equal Protection Claim

Judge Nivison wrote ""The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." MuleroCarrillo v. Roman-Hernandez, 2015, cert. denied, (2016). Generally, to state an equal protection claim, a plaintiff must allege facts capable of supporting a plausible inference that "compared with others similarly situated, the plaintiff was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id. at 106 (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., (1st Cir. 2001)). Absent such facts, decisions related to a person's rights, privileges, and benefits under state law require only a rational basis." The Plaintiff doesn't comprehend the judges reasoning here. The Plaintiff *was* prosecuted in retaliation with "intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." The Plaintiff was extorted the $60 bail fee for mailing a document at the order of the Defendants, the

Belfast District Court and three of it's judges. Since the Plaintiff is *not* "absent such facts" decisions related to Plaintiff's rights require only a rational basis; that is it is only rational that a jury be presented these facts to make the aforementioned rational decision.

Judge Nivison writes "Here, Plaintiff has not alleged facts that might suggest selective treatment based on impermissible considerations. In other words, Plaintiff has not alleged that the fee is applied differently to him based on an unlawful reason. Plaintiff, therefore, has failed to state an equal protection claim based on differential class-based treatment. Compare Schilb, 404 U.S. at 369 – 70 (considering an equal protection theory because the 1% fee discussed in Schilb would only be imposed on those detainees who opted to secure their release by paying 10% of the bail amount). See also Broussard v. Par. of Orleans, (5th Cir. 2003) ("The fee provisions at issue here apply to all arrestees, regardless of whether they enlist the services of a bail bondsmen or use their own funds to pay bail. Thus, the fact that the Louisiana statutes fail to classify dooms arrestees' equal protection claims and prevents them from positively distinguishing their challenge from the facts of Schilb, at least on equal protection grounds.")

Again, the *Schilb* fee was only $7.50, and again, in Giacco vs Pennsylvania the Supreme Court upheld "the Act of 1860 which states that the jury should decide who pays the fee, not state codes or statutes. The judge repeated himself here. Judge Nivison seems to miss the fact that there *is* inequality here, for he keeps citing cases wherein the parties were actually guilty of criminal activities, like the "not found guilty" shoplifter in a "diversionary program". And again, Marbury vs Madison dooms Nivison's arguments in favor of his colleagues, and Plotkin vs CIA drives in the last nail.

## Due Process Claim

Judge Nivison wrote "Preliminarily, the authority discussed above establishes that the imposition of a modest administrative fee does not constitute a constitutional violation. In this case, the Maine Bail Code reflects that the $60 fee is paid as the bail commissioner's fee. See 15 M.R.S. § 1023(5). In this way, the fee is an administrative fee. Insofar as a bail commissioner is required, as in Plaintiff's case, to appear promptly at the jail to assess bail when a person is arrested outside of normal business hours, the $60 fee cannot rationally be considered unreasonable." Again, Judge Nivison is a former Maine State judge and presumably still a member of the Maine State BAR association to whom he has sworn allegiance. For him to arbitrarily rule that "the $60 fee cannot rationally be considered unreasonable." is both irrational and unreasonable, as it is more than the rest of the 49 states levy including the ones that he himself has cited.

Nivison writes "Given that Plaintiff complains that the fee was not returned after the criminal charges were dismissed, Plaintiff's due process claim can be fairly characterized as a challenge to the post-deprivation process (i.e., the process that follows the payment of the fee). Plaintiff thus would have to demonstrate the absence of an adequate post-deprivation process in order to sustain a constitutional challenge. The Plaintiff would point out that Judge Nivison's colleagues on the Maine bench and BAR failed to respond to his requests with the written rules for the procedure for getting the stolen funds returned even after filing unanswered motions alleging that this is indeed extortion and demands for the return of the $60. Again, these facts can

only be fully determined with proper discovery, interrogatories and depositions, and is the job for the jury to decide, and not for the former Maine judge who has involved himself without recusal in the most inappropriate and unfair way.

Nivison writes "Plaintiff thus would have to demonstrate the absence of an adequate post-deprivation process in order to sustain a constitutional challenge. See Mickelson v. Cty. of Ramsey, (2016) (concluding that county's collection of a $25 booking fee did not violate due process where the county provided a post-deprivation procedure through which individuals who *were wrongfully arrested, not charged, or not convicted could recover the booking fee).*" In this case "Persons arrested and detained in Ramsey County are entitled to a refund of the booking fee in three scenarios. First, an arrestee can recover the funds if he or she is not charged with a crime. Second, an arrestee may receive a refund if charges are dismissed. Finally, an arrestee may recover the $25 upon acquittal." As a former Maine judge and presumably still a member of the BAR judge Nivison absolutely knows that this recovery process is non-existent in Maine, therefore this is subterfuge on his part, and constitutes the appearance of bias. In this case "to facilitate the refund process, the Ramsey County sheriff's department, according to a written policy, must give all released inmates a "Booking Fee Refund Form." Eligible inmates who properly submit this form can recover the $25 taken for the booking fee."

This is what the State of Maine should have but doesn't, as ex-Maine judge Nivison is acutely aware; a policy in which "to facilitate the refund process, the Maine bail commissioners, according to a written policy, should give all released inmates a "Booking Fee Refund Form." Eligible inmates who properly submit this form can recover the $60 taken for the bail commissioner's fee.

Judge Nivison writes "In this case, Plaintiff has not asserted any facts to support the conclusion that the State of Maine lacks a process by which a person can seek the return of the fee under certain circumstances. Instead, he simply asserts that he cannot recover the fee because bail commissioners are immune from suit." As a former Maine judge, Nivison obviously knows that this just isn't so, and Plotkin vs CIA forbids such subterfuge on behalf of the judge. The pro se Plaintiff shouldn't have to assert facts that are obvious to any rational person with a moral compass. Every judge in the State of Maine carefully guards this precious cash cow as evidenced by the chief justices statement that ""It's a mature system," Maine Chief Justice Leigh A. Saufley said. "There are parts of the system that could use some work." She was obviously referring to the lack of any process, like the Ramsey County Sheriff's "Booking Fee Refund Book" that judge Nivison has chosen to gloss over with rhetoric and case law that doesn't fit this case.

There is no process for redress as evidenced by the chief justices quote above and unfortunately judge Nivison knows it very well. He should have recused himself when he read in the original complaint "This reluctant pro se Plaintiff is a babe in the woods, and has no way of knowing if perhaps even the Federal Judge is not a wolf in sheep's clothing, and cut of the same cloth. Although he hopes for a real Judge, this judge must not come from the ranks of the Maine extortionists, and must be from away. "

It was at this point that the esteemed judge Nivison should have removed his glasses and recused

himself. He was accused of the same extortion as the other Defendant's, and instead of disclosing the fact that he, too, was involved in this common law extortion that this case is about, he used subterfuge and refrained from disclosing the truth. The Plaintiff found out only today after becoming suspicious of the biased "recommendation".

Nivison finishes with "Importantly, Plaintiff has not alleged that he requested the fee from and was denied the fee by a person or entity one would reasonably expect to be authorized to return the fee to him.11 Plaintiff, therefore, has not alleged facts to support a due process claim based on an inadequate post-deprivation process." The Plaintiff has now demonstrated that he indeed requested the fee from the clerks, Judge Murray and DA Rushlau, and that judge Nivison is conversant in the fact that Maine does *not* have any system to recover these funds, therefore this is extortion and therefore he has volunteered to become a Defendant in choosing to side with them, his colleagues, and former partners in crime.

Plaintiff wishes to amend the complaint to remove the "class action" status.

Also, the Plaintiff wishes to amend the complaint to remove the Maine association of Police and the Maine State BAR Association as Defendants.

For the newspaper to quote judge Nivison as saying ""De minimis is a legal term to refer to a matter that is so trivial that it does not justify judicial examination." is truly alarming. Because of the Pacer electronic filing glitch, the Plaintiff was served notice of the judges decision via the newspaper, and this taints the jury pool.

Plaintiff humbly and respectfully requests that judge Nivison, who failed to disclose that for 15 years that he himself had also turned a blind eye to the bail commissioner's hand in 100's of innocent pockets with no recourse, recuse himself and be added to the list of the Maine judges that are Defendants, as he unlawfully failed to disclose this egregious conflict of interests, and has unlawfully ruled on behalf of his cohorts in Maine judicial robes.

/s/ Bradley Paul Williams

8/05/2016